Bissell, J.,
delivered the opinion of the court.
W. G. Motley was indebted to the National State Bank of Boulder in 1890 on a promissory note which fell due in December. In the following January the bank brought suit on themote. By a proper proceeding under the statute it sued out a writ of attachment to aid in the collection. The writ ran, however, against W. J., and not against Motley with the middle initial G., or with his first name written in full. The German National Bank of Denver was garnished under that process by a notice which ran against W. J. It answered through its cashier that it was not indebted to W. J. Motlejn The Boulder bank traversed the answer, and this issue was tried before the court, which rendered a judgment against the German National Bank for the money which was on deposit in that institution to the credit of W. G. Motley at the time the process o£ garnishment was served. The judgment was rendered without any amendment of the process or proceedings. The court deemed an amendment entirely-unnecessary, and held the variance to be totally immaterial. The appeal is from this judgment.
The stability of the law depends upon the rigor with which the courts and profession adhere to precedents which in their scope and applicability are decisive of the case in hand. Notwithstanding the universal recognition accorded to this legal aphorism, instances are not infrequent where courts have refused to be controlled by the law as it was anciently written, when it is plainly seen to be inapplicable to the conditions of modern society. It seldom happens that a case is presented *19 which so well illustrates the force of the maxim eessante rations legis cessat ipsa lex. It was anciently written, both in historical and legal records, that a man had but one name. David, Terah, Napthali and Jacob were rulers and prophets. William and Rufus and John were ancient kings. It is historically true that surnames were almost unknown in Europe and in England until the Norman conquest. Instances of their existence are not common even in the Domes-day book, and it was not until the statute of Henry V, concerning writs and indentures, that the use of surnames majr be said to have been firmly established in the law of England. Even as late as the beginning of the eighteenth century, many families in Yorkshire had no other name than the Christian. Out of these facts sprang the law which is found laid down in the early authorities, that the middle letter formed no part of the name of any person. In other words, in conformity with the then existing custom, the court said that a man was known by his first name, and accuracy in that respect was all that the law required. The law and the decisions, which were the outgrowth of the existing conditions of society, can manifestly have no application to our modern commercial organizations. The wide extension and rapid increase of population, the great and unprecedented growth of commercial transactions, have compelled the use of different forms, and the adoption of different methods to distinguish individuals. The middle name, or the middle letter, is as much a part of a man’s name in this part of the present century as either his Christian or his surname. The result is that the more modern authorities in the eastern and commercial states have adjudged that the middle letter, or the middle name, is as essential to the accuracy of the writ as either the Christian or the surname. It would seem that when the question arises as to the rights to be secured by a process of attachment served on a third person whose position was changed prior to judgment, it may very properly be held that a mistake in the middle letter is such a legal misdescription as will avoid the process in favor of the one whose condition is altered. It appeared on *20 the trial of tlie issue presented by the traverse that after the garnishment was served on the German National Bank it paid out all the money then on deposit with it on checks properly drawn by W. G. Motley. The case thus fairly presents the question whether the bank had a right to pay out the money on checks properly drawn in the name of the depositor, though it may have been served with an attachment process running against a person with the same surname but with a different middle initial. Following the oases in Maine and Massachusetts, and relying upon the principle enunciated in the other cases which, are cited, it must be held that the bank is protected in these payments. It is a well known fact in the his-, tory of all banking institutions that more than 90 per cent of all the checks that are drawn on them are drawn in the initials representing the Christian and middle name of the depositor. This fact is of great moment; in the settlement of this question. As was well said by one of the learned courts, “ it is certain that an initial, standing with a name of baptism, is no part of it in pleading; but it follows not that an omission of it is to be disregarded as an index of notice to purchasers. Persons of the same name are individuated by various additions ; sometimes by title, profession, residence or seniority; sometimes by numerals; sometimes by color of complexion and hair; and sometimes by an initial.” Pursuing this same line of reasoning, it was held that the initial is a part of the name, and that Sarah Sisson and Sarah F. Sisson are different names. This rule would make the name W. G. a different and another name than W. J. The result must be that the. German National Bank was not bound by the- writ which sought to hold any funds in its possession belonging to W. J. Motley, so long as it was not shown that the bank held any money belonging to any W. J. Motley. Dutton v. Simmons, 65 Me. 583; Terry v. Sisson, 125 Mass. 560; Bowen v. Mulford, 10 N., J. L. 230; Esther Hutchinson’s Appeal, 92 Pa. State, 186; Wood v. Reynolds, 7 W. & S. 406; Fewlase v. Abbott, 28 Mich. 270; Tweedy v. Jarvis, 27 Conn. 42; Perkins v. McDowell, 23 Pac. Rep. 71; Waples on Attachment, p. 350.
*21 It is not intended to so broadly declare this doctrine as to necessarily make it applicable to grants and contracts where the identity of the persons may be the subject-matter of easy proof, nor to cases of pleading which are susceptible of amendment without detriment to the rights and interests of third parties, but simply and solely to those writs and notices by which it is sought to hold third persons whose rights may be affected by the error, and whose situation has changed before they may have in any known legal way become charged with knowledge and notice of the identity of the individual described by the erroneous name. There was no showing in the present case that the bank had any knowledge whatever that their depositor was the one sought to be reached by the process at the time they paid out the money on his checks. Confining the decision to this particular class of cases, it is held that a garnishee is totally unaffected by any notice which may be served upon him, unless it properly runs with an accurate description against the individual to whom he may be indebted, unless it be in those eases where the proof may show that the garnishee had actual knowledge of the identity of the debtor and the person named in the process. Whether, if the evidence demonstrates that the holder of the fund is not misled by the error in the writ, and from the facts must-know that he is indebted to the defendant in the suit, he-may disregard the process and rely on a technical inaccuracy' for his defence, is a question not clearly presented by the record, and it is therefore left undetermined.
Since the court below rendered judgment in contravention' of this principle and held the bank bound, though its cred-i'tor was erroneously described, its action must be reversed and the cause remanded for a new trial in conformity with this opinion.

Reversed.